UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THE TRAVELERS INDEMNITY COMPANY, a foreign insurance company,<br><br>Plaintiff,<br><br>v.<br><br>MCKINSTRY CO., LLC, a Washington limited liability company, et al.,<br><br>Defendants. | CASE NO. 2:24-cv-01718-TL<br><br>ORDER ON MOTIONS TO STAY |

This matter is before the Court on two motions to stay. Defendant McKinstry Co., LLC ("McKinstry"), filed the first (Dkt. No. 11); Defendant Sellen Construction Co. ("Sellen") filed the second (Dkt. No. 13). Having reviewed Plaintiff Travelers Indemnity Company's ("Travelers") response (Dkt. No. 15), the Defendants' respective replies (Dkt. Nos. 18, 20), and the relevant record, the Court GRANTS the motions and STAYS the case.

## I. BACKGROUND

In deciding the instant motions to stay, the Court need not exhaustively recite the facts that constitute the central, on-the-ground controversy in this case and the underlying state-court lawsuit.

ORDER ON MOTIONS TO STAY - 1

Suffice it to say that the axis around which both cases revolve is a building constructed in downtown Seattle, Washington, and some 47,130 square feet of metal paneling installed on its exterior.

A.   **The Parties**

   1.   **Plaintiff**

Plaintiff Travelers is an insurance company. Dkt. No. 1 ¶ 1.1. Travelers "issued a commercial general liability insurance policy to McKinstry . . . for consecutive one-year periods covering the policy period of January 31, 2017, to January 31, 2022." *Id.* ¶ 4.1.

   2.   **Defendants**

Travelers named three Defendants in the instant action: a real-estate developer, a contractor, and a sub-contractor. The real-estate developer, Urban Visions MFA Second and Pike LLC ("Urban Visions"), erected a building at 1430 Second Avenue in Seattle, Washington. Dkt. No. 12-1 ¶ 2.2. In 2015, Urban Visions engaged with the contractor, Sellen, for construction of the building. *Id.* And in 2016, Sellen engaged with the sub-contractor, McKinstry for "certain scopes of work." Dkt. No. 12-2 ¶ 3.3. Relevant to this case is McKinstry's 2017–18 installation of an allegedly defective "custom exterior metal panel system." *Id.* According to Sellen, the "damage [caused by the panel system] is so prevalent and extensive that all of the metal panels in question must be replaced." *Id.* ¶ 3.8.

B.   **The Action and the Underlying Action**

This is an action for declaratory relief that seeks the Court's adjudication of Travelers's duties to defend and indemnify McKinstry and Sellen.[1] *See generally* Dkt. No. 1. The trigger for Travelers's complaint here is an underlying state-court lawsuit, wherein Urban Visions, the developer, is suing Sellen, its contractor, for breach of contract. Dkt. No. 12-1 ¶¶ 3.1–3.3. Urban

---

[1] As to the third Defendant, Urban Visions, Plaintiff Travelers seeks only a judicial declaration that Urban Visions is "bound by any judicial declarations in this matter involving" the insurance policies at issue. *See* Dkt. No. 1 § VII, ¶ 6.

ORDER ON MOTIONS TO STAY - 2

1   Visions alleges that Sellen "failed to complete its Work in accordance with the standards and
2   quality specified in the Contract and industry standards." *Id.* ¶ 3.2. Further, Sellen allegedly
3   "fail[ed] to indemnify, hold harmless, and defend Urban Visions against losses and/or claims
4   arising out of Sellen's performance of Work." *Id.*

5         Sellen, in turn, has sued McKinstry, its sub-contractor, in a third-party complaint for
6   contractual indemnity, equitable indemnity, breach of contract, breach of warranty, and
7   negligence. *See* Dkt. No. 12-2 ¶¶ 4.1–8.5. Sellen alleges that, "To the extent that Sellen is liable
8   to [Urban Visions] for breach of contract or declared to owe [Urban Visions] a duty of defense or
9   indemnity, such liability arises from the acts, omissions, performance, or non-performance of
10  McKinstry." *Id.* ¶ 3.18.

11  **C.    Procedural Background**

12        On October 21, 2024, Travelers filed the instant complaint against McKinstry, Sellen,
13  and Urban Visions. Dkt. No. 1. All three Defendants waived service. Dkt. Nos. 3, 4, 23. The case
14  was assigned to United States Magistrate Judge S. Kate Vaughan.

15        On November 19, 2024, McKinstry and Sellen respectively filed motions to stay the instant
16  case, pending resolution of the underlying state-court lawsuit. *See* Dkt. Nos. 11, 13. During the
17  pendency of the motions to stay, McKinstry and Sellen moved for two extensions to their deadline
18  to answer Travelers's complaint. Dkt. Nos. 21, 24. Judge Vaughan initially extended these
19  Defendants' deadline to answer until January 20, 2025, then re-extended the deadline to a date 14
20  days after the Court's adjudication of the motions to stay. *See* Dkt. Nos. 22, 25.

21        In the meantime, Urban Visions remained absent in the case and neither appeared nor
22  answered Travelers's complaint. *See* Dkt. No. 26. On February 25, 2025, Travelers advised
23  Urban Visions that it intended to file a motion for an entry of default against Urban Visions (*see*
24

1  Dkt. No. 28-2), and on March 5, 2025, Urban Visions finally appeared (Dkt. No. 29). It appears

2  now that all Parties to this case are present and accounted for.

3        On March 6, 2025, this case was reassigned from Judge Vaughan to the undersigned.

## II. LEGAL STANDARD

"[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) (collecting cases). This includes "discretionary power to stay proceedings in its own court." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). When a stay is proposed, the court must weigh the competing interests impacted, including "the possible damage which may result from the granting of a stay, the hardship of equity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.* at 1110 (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis*, 299 U.S. at 255).

## III. DISCUSSION

The Court examines the competing interests, as articulated in *Landis*, in turn.

**A.  Possible Damage from Granting a Stay**

Travelers argues that "[s]taying this Coverage Action will prejudice Travelers by forcing it to pay for the defense of two separate parties in the Underlying Lawsuit where there is likely no coverage obligation in the first place." Dkt. No. 15 at 6. A stay, Travelers asserts, would be "entirely inequitable." *Id.* at 7.

The Court disagrees. First, "advancing defense costs is part of an insurer's obligation and costs of doing business." *Zurich Am. Ins. Co. v. Omnicell, Inc.*, No. C18-5345, 2019 WL 570760, at *5 (N.D. Cal. Feb. 12, 2019). If the Court eventually determines that Travelers has a duty to defend, then it will not have been damaged at all by paying for Sellen and McKinstry's defense in the underlying lawsuit—that is, Travelers will have merely done its job as insurer.

Second, Travelers claims a right to reimbursement for defense costs incurred if it is later determined that none of the claims for which it provided a defense or defense costs is covered. Dkt. No. 1 ¶ 4.18; *see also* Dkt. No. 12-3 at 12 (reserving Travelers's "right to seek reimbursement of any defense related payments"). Therefore, if the Court determines that Travelers does not have a duty to defend, "defense costs can be recovered after the underlying action is terminated." *Charter Oak Fire Ins. Co. v. Zurich Am. Ins. Co.*, No. C21-1344, 2022 WL 1508050, at *5 (W.D. Wash. Mar. 31, 2022) (citing *Omnicell, Inc.*, 2019 WL 570760, at *5); *see also W. Am. Ins. Co. v. Constr. Loan Servs. II*, No. C20-1092, 2020 WL 6747958, at *2 (W.D. Wash. Oct. 6, 2020) ("While the Court takes no position on the question of whether the [defense-cost] reimbursement clause will ultimately be enforceable, an issue the parties contest, its existence lessens the likelihood that Insurers will be damaged by a stay."); *Fed. Ins. Co. v. Holmes Weddle & Barcott PC*, No. C13-0926, 2014 WL 358419, at *3 (W.D. Wash. Jan. 31, 2014) (existence of defense costs reimbursement clause "lessens the likelihood that [insurer] will be damaged by a stay"). Travelers's protestations about "pay[ing] for the defense" in the underlying lawsuit thus "carr[y] no weight in the stay analysis." *Holmes Weddle*, 2014 WL 358419, at *3. This interest weighs in favor of granting a stay.

ORDER ON MOTIONS TO STAY - 5

B.   **Hardship or Inequity in Being Required to Go Forward**

In coverage actions such as this one, there are generally three types of hardship to consider when adjudicating a stay. Defendants invoke all three in their respective motions. *See* Dkt. No. 11 at 6–9; Dkt. No. 13 at 8–11.

The first is that "by bringing the action for a declaratory judgment regarding coverage, the insurer effectively attacks its insured and thus gives aid and comfort to the claimant in the underlying suit." *Holmes Weddle*, 2014 WL 358419, at *4 (cleaned up). The second is that the coverage action forces the insured party to simultaneously litigate against its insurer and against the plaintiff in the underlying action—a so-called "two-front war." *Id.* And the third "is the real risk that, if the [coverage] action proceeds to judgment before the underlying action is resolved, the insurer could be collaterally estopped to contest issues in the latter by the results in the former." *Id.*

All three are salient here, but the Court finds the third especially persuasive in this case, thus rendering unnecessary a granular parsing of each. *See id.* (finding it dispositive in favor of maintaining a stay where a court's findings of fact and conclusions of law in a coverage action could prejudice a party in the underlying complaint); *Or. Mut. Ins. Co. v. Ham & Rye, LLC*, No. C10-579, 2010 WL 2787852, at *4 (W.D. Wash. July 14, 2010) (staying coverage action pending outcome of underlying litigation because of "significant risk of prejudice to [the insured] in the [underlying] proceedings if this court were to make factual determinations related to coverage"). McKinstry asserts that "factual issues in this coverage dispute overlap with those in the Underlying Lawsuit, creating a risk of inconsistent results." *Id.* at 7. The Court finds it prudent to be wary of such overlap.

Generally speaking, at heart in the underlying lawsuit are both the nature of the underlying damage—*i.e.*, the unsatisfactory metal paneling that, for whatever reason or reasons,

was deemed unacceptable and required replacement—and the apportionment of fault among contractor and subcontractor(s) for causing it. *See generally* Dkt. Nos. 12-1 (underlying complaint), 12-2 (underlying third-party complaint).

Travelers's Complaint illustrates the need for the Court to avoid encroaching upon the state-court case. Section V of the Complaint lists 24 "actual and justiciable controvers[ies]" that purport to show that Travelers owes Defendants no duty to defend or indemnify. Dkt. No. 1 ¶¶ 5.3–5.8, 5.10, 5.13–5.14, 5.16–5.17, 5.19–5.20, 5.22–5.23, 5.25–5.26, 5.28–5.30, 5.33–5.34, 5.36, 5.38. But this recitation of issues is self-defeating. Many of these cannot be resolved without a full accounting of the facts of the case—exactly what the state court is primed to do in the underlying lawsuit.

For example, Travelers asserts that "[t]here is an actual and justiciable controversy as to whether the claims against McKinstry involve liability for 'property damage' to that particular part of any property that must be restored, repaired, or replaced *because McKinstry's work was incorrectly performed on it*." *Id.* ¶ 5.19 (emphasis added).[2] McKinstry asserts that this very question is at issue in the underlying lawsuit. Dkt. No. 11 at 7; *see* Dkt. No. 12-2 ¶ 6.4 (alleging that *Sellen*'s breach of its contract with Urban Visions is attributable to *McKinstry*'s "failure to perform [] work in strict accordance with the terms and conditions of the Subcontract"). In rebuttal, Travelers argues:

> There is no dispute that the Underlying Lawsuit involves an allegation that McKinstry was responsible for the procurement and installation of the panels. There is also no dispute that the panels were damaged. [T]he question in the Coverage Action is whether the allegations against McKinstry trigger the Travelers' insuring agreement and it [*sic*] they do, whether the allegations against McKinstry are excluded under the policy.

---

[2] This identical claim is made regarding Sellen. *Id.* ¶¶ 5.4, 5.20,

ORDER ON MOTIONS TO STAY - 7

Dkt. No. 15 at 8. While these certainly are questions at issue here, they do not exist merely on paper or within the confines of the courthouse, entirely abstracted from the galvanized-steel and polyurethane-foam reality at Second and Pike. *See* Dkt. No. 12-2 ¶ 3.4. The allegations in all three complaints—the instant complaint in this Court, and the complaint and third-party complaint in state court—refer to real acts or omissions performed or not performed by real actors, working with real materials. The Court must take pains to ensure that everyone involved, in every facet of this case, works with the same set of facts.

      Sellen makes the argument succinctly: "[T]he merits of [Travelers's 'actual and justiciable controvers[ies]' cannot be determined without delving into facts at issue in the Underlying Litigation." Dkt. No. 13 at 5. Travelers alleges that there is a controversy as to whether any "property damage" is at issue in the underlying lawsuit. *Id.*; *see* Dkt. No. 1 ¶ 5.4. But "most obviously," resolving this issue simultaneously in two forums puts Sellen in an impossible position: Sellen seeks to minimize any finding of property damage in the underlying lawsuit against Urban Visions in state court, then take the opposite position to demonstrate Travelers's duty to defend and indemnify in the action in this Court. *See* Dkt. No. 13 at 5. Such logical and legal contortion is unworkable. *See Great Am. E&S Ins. Co. v. Dye Precision, Inc.*, No. C24-609, 2024 WL 4529578, at *10 (S.D. Cal. Oct. 16, 2024) (finding second *Landis* factor weighed in favor of stay where "Defendants could be forced to take conflicting positions in the two actions").

      By way of further example, "Travelers," McKinstry argues, "is trying to prove in [the instant federal] case that Sellen is not an 'additional insured' because Sellen's liability in the Underlying Lawsuit is based on its own conduct, as opposed to McKinstry's." *Id.* at 7. But "[w]hether Sellen's alleged liability is due to an act or omission of McKinstry is exactly what Sellen's third party complaint against McKinstry [in state court] seeks to determine." *Id.* at 8.

This Court's construction and application of the contractual terms in the insurance contract requires an answer to this question. If this Court handles either category of questions prematurely, there are legitimate concerns that it might arrive at a conclusion that prejudicially estops the court in the underlying lawsuit from finding differently. *Compare* Dkt. No. 1 ¶ 4.5 ("additional insured endorsement"), *with* Dkt. No. 12-2 ¶¶ 4.1–8.5 (Sellen's allegations in underlying third-party complaint against McKinstry). Put another way, the Court finds it most prudent to permit the state court in the underlying action to make findings that will be materially important to this Court's ultimate interpretation of the insurance contract between the Parties.

Even "some possibility of factual overlap" between a coverage action and the underlying litigation is sufficient to warrant a stay. *See Landmark Am. Ins. Co. v. De-Hui Wu*, No. C14-4229, 2014 WL 12962461, at *3 (C.D. Cal. Sept. 22, 2014). The overlap between the three complaints here exceeds "some possibility." Therefore, this interest weighs in favor of granting a stay.

C.     **Orderly Course of Justice**

In seeking to maintain an orderly course of justice by resolving one lawsuit before proceeding to the next, Sellen asserts that, simply put, "resolution of the facts in the underlying action promotes the orderly course of justice." Dkt. No. 13 at 11 (quoting *Ham & Rye LLC*, 2010 WL 2787852, at *4). Travelers does not provide a satisfactory response to Sellen and McKinstry's prudent request for patience.

Travelers asserts that the "Underlying Lawsuit will not resolve material facts concerning coverage, which can be decided based on allegations in the Underlying Lawsuit. The coverage issues are ripe for determination and judicial economy favors this Court considering the same." Dkt. No. 15 at 10. But as discussed above, the Court disagrees that the resolution of the underlying lawsuit is untethered to its adjudication of the instant case. Moreover, McKinstry asserts that trial in the underlying lawsuit is scheduled for June 16, 2025, and that "[a] six-month

stay is likely all that is necessary." Dkt. No. 20 at 5. Since McKinstry made that assertion some three months ago, nearly half of that time has already lapsed, cutting the length of the requested stay to approximately three months. And while mindful that litigation rarely proceeds as smoothly as a well-intended case schedule might contemplate, the Court finds Travelers's concerns about "an indefinite, and potentially lengthy, stay" (Dkt. No. 15 at 10) to be overstated. This interest thus weighs in favor of granting a stay.

Given the interests discussed above, the Court finds that a stay is appropriate here, until the resolution of the underlying state-court action.

## IV. CONCLUSION

Accordingly, it is hereby ORDERED:

(1) The Court GRANTS Defendants McKinstry's and Sellen's motions to stay (Dkt. Nos. 11, 13). This case is STAYED pending resolution of the underlying state-court litigation *Urban Visions MFA Second and Pike LLC v. Sellen Construction Co., Inc. et al.*, King County Superior Court No. 23-2-11572-4 SEA.

(2) The Parties SHALL file a joint status report apprising the Court of this case's status **no later than fourteen (14) days** after the conclusion of the underlying litigation.

Dated this 12th day of March 2025.

Tana Lin
United States District Judge